IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 18, 2011

## AMY LYNN PHELPS v. EMERSON JOHN PHELPS

**Appeal from the Chancery Court for Maury County**
**No. 09-027     Stella L. Hargrove, Judge**

---

**No. M2010-00856-COA-R3-CV - Filed June 24, 2011**

---

The trial court granted the wife a divorce after a marriage of nineteen years, awarded her most of the marital property including the marital home, and made her wholly responsible for the mortgage debt on the residence. The court awarded the wife the husband's share of the equity in the home in the form of alimony *in solido*. The husband argues on appeal that the property division was inequitable. He also contends that the trial court should have awarded alimony to him rather than to the wife. We affirm the trial court's division of marital property and its determination not to award alimony to the husband, but we modify its judgment to include husband's share of the equity in the marital home in the property division, rather than as a separate award of alimony *in solido*.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed as Modified**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Stacy D. Attkisson, Columbia, Tennessee, for the appellant, Emerson John Phelps.

Wesley Mack Bryant, Columbia, Tennessee, for the appellee, Amy Lynn Phelps.

### OPINION

### I. A TROUBLED MARRIAGE

Emerson John Phelps ("Husband") and Amy Lynn Phelps ("Wife") were married in their home state of New York on August 25, 1990. Husband was twenty-one years old at the time of the marriage and Wife was eighteen. Wife earned an associates degree in nursing, became a registered nurse, and began working at a hospital. Husband took a job removing

asbestos, which paid well, but Wife was worried about the health effects of the work and asked Husband to quit, which he did.

The parties came to Tennessee to visit with Wife's aunt and uncle. They both liked the area and decided to relocate. They moved to Columbia, Tennessee, in 1993, and Wife quickly found a job as a nurse. Husband worked odd jobs and was eventually hired to work at the Maury County Sheriff's Department. Husband's father died in 1997, and Husband suffered a "major breakdown." The parties returned to New York in 1998, and they moved into a cabin owned by Husband's mother. They eventually purchased the cabin, using money that Wife had saved by working overtime. The price was $35,000, which was well below the cabin's market value. A 1929 Model A Ford parked in the garage was later deemed by the court to be marital property.

The only child of the couple, a daughter, was born on October 17, 2001. Wife was working as a school nurse at the time, and she took time off to care for the child, returning to work at the beginning of the following school year. The parties agreed that Husband would stay home and take care of the child after Wife returned to work, but Husband began showing symptoms of obsessive-compulsive disorder. According to his own appellate brief, he "felt the need for the home to be spotless and germ-free for [the child] and himself. He began to go overboard with germ issues and would wash his hands until they bleed." Other bizarre behavior included not allowing other children to play with the child or touch her toys, waking her up at two or three in the morning to shower because she was not clean enough, and discussing his death with her, asking how she would feel if he were dead.

The parties moved back to Tennessee in 2005, and Wife immediately found a job at Maury Regional Hospital. She worked a full-time schedule which only included weekend hours. Husband was unable to find immediate employment, but was eventually rehired at the Sheriff's Department. Wife testified that Husband stayed in bed or on the couch until he was employed, so she had to take care of their child from Monday through Friday. In 2006, the parties bought a home in Columbia for $190,000. They subsequently sold the home in New York for $95,000 and used the proceeds to pay down the mortgage on the marital home. There was a balance of $42,000 on the mortgage at the time of trial.

Needless to say, Husband's worsening mental illness took a toll on the parties' marriage. Things apparently came to a head in December 2008. Wife had previously talked to Husband about leaving him, and he had consistently responded by saying that he would kill himself if she left.

On December 16, 2008, Wife told Husband she wanted a divorce. The following morning, Husband, who was still employed by the Maury County Sheriff's Department, carried a handgun as he walked through the kitchen of the parties' home, where the minor child was having breakfast. He went out into backyard, held the gun to his head, and threatened to kill himself. The SWAT team was called, and after about 45 minutes they were able to talk him into putting the gun down. He was taken to the hospital and transferred for psychiatric treatment. That episode led to an agreed restraining order that prohibited Husband from carrying a firearm or having contact with Wife or with the minor child. Husband also agreed to go to counseling.

## II. DIVORCE PROCEEDINGS

On January 15, 2009, Wife filed a complaint for divorce in the Chancery Court of Maury County. She alleged as grounds inappropriate marital conduct or, in the alternative, irreconcilable differences. She asked the court to equitably divide the marital property, to award her custody of the parties' daughter, and to order Husband to pay child support. She also asked for an award of alimony. In his answer and counter-claim, Husband admitted that there were irreconcilable differences between the parties and that their marriage was irretrievably broken, but he alleged that Wife had abandoned him. He asked for custody of the child and for an award of alimony.

The divorce hearing was conducted on October 20, 2009. Both parties testified at length, and there also was brief testimony by the child's counselor and Maury County Sheriff Enoch George. No court reporter was present, so our understanding of what transpired at the hearing is derived from the court's Memorandum and Order and from the Statement of the Evidence that was prepared in accordance with Tenn. R. App. P. 24(c).[1] We also have the benefit of the transcript of the discovery deposition of Husband's certified mental health counselor, which was admitted into the record by agreement of the parties, and the child's confidential psychological record.

---

[1]According to the statement of the evidence, the child's counselor testified that she sees the child once every other week because of anxiety issues. She said that the child talked about missing her father and about how they used to play together. She also testified that the child believed it was her responsibility to keep her father from hurting himself, and that she blamed herself for his suicide attempt. The counselor recommended that the child be able to visit with her father, but that the visits be scheduled on a limited basis and under supervision, with continued counseling for both the child and her father.

Sheriff George testified that he knew both parties and that they were good people. He also testified that "he would rehire Mr. Phelps if he was the best man for any available position."

At the conclusion of the hearing, the trial court named Wife temporary primary residential parent and set supervised visitation for Husband, taking the other issues in the case under advisement. On November 16, 2009, the court filed a Memorandum setting out its findings of fact and conclusions of law. The court discussed Husband's psychological history and described a long course of irrational conduct by Husband, much of which was played out in the presence of the child. We have already discussed some of that conduct and do not need to elaborate any further.

The court noted Husband's complaint that Wife was cold and distant with him, but it found that his complaints "pale in the face of his cruel and unusual treatment of Wife and their child." The court accordingly granted Wife a divorce on the ground of inappropriate marital conduct and named her as the child's primary residential parent, with Husband to pay child support in accordance with the guidelines. Because Husband had not earned very much money after 1998, the court imputed income to him based on a full-time job at minimum wage, resulting in a child support obligation of $328 per month.[2] Husband was also given the right to exercise supervised parenting time with the child.

The trial court then turned to the division of marital property, discussing every one of the statutory factors set out in Tenn. Code Ann. § 36-4-121(c) and applying them to the testimony it had heard. The parties had not accumulated very much in the way of marital assets, and the marital estate mostly consisted of the equity in the marital home, the furniture in that home, a 2005 Chevrolet Avalanche, the 1929 Model A Ford, and Wife's 403(b) retirement account, which had a value of $5,187.87.

Wife had presented an inventory of the marital assets to the court, together with her proposed valuations as to each asset. She also proposed a specific division of those assets. The trial court declared that it was adopting the valuations proposed by Wife and awarded her all the property she requested, as well as the guest room furniture and the child's furniture, which had a purported total value of $1,500.[3]

---

[2]The court noted that there were no income and expense statements in the record reflecting Wife's or Husband's current income. However, for the purposes of calculating child support, the parties had agreed to use a figure of $52,000 a year for Wife's income as a registered nurse.

[3]There is an exhibit in the record titled "Wife's Statement of Marital Property," which contains columns for both Husband's and Wife's values of the property. There is no separate statement by Husband. Wife's statement shows wide disparities as to the listed valuations for some of the property. For example, Wife gave a value of $25 to "Holiday decorations" and the same to "Digital camera." The values listed in Husband's columns for those same items were $1,000 and $500 respectively.

For the purposes of this appeal, the most important component of the property division was the trial court's award to Wife of the marital home, which was valued at $171,000. The court declared that it was awarding Husband's share of the equity in the marital home to Wife in the form of alimony *in solido*. Wife was also made entirely responsible for the $42,000 balance owed on the mortgage as well as all the other marital debts, totaling an additional $17,384. Husband was not held responsible for any marital debt, but he was declared liable for $3,280 in past due child support, which was ordered to be paid in sixty days. Wife was awarded the entire amount in her 403(b) account. Husband was awarded most of the household furnishings and the antique automobile, which the court valued at $11,000.

The Final Decree of Divorce incorporated the trial court's Memorandum, and was entered on January 12, 2010. Husband subsequently filed a motion for new trial or to alter judgment, which focused on the alimony *in solido* awarded by the trial court. The court denied the motion, stating that even if an award of alimony *in solido* was not appropriate, the factors governing the equitable division of marital property would still weigh in favor of awarding Wife all the equity in the marital home, free from any claim by Husband. This appeal followed.

### III. ANALYSIS

#### A. The Standard of Review

Our review on appeal of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984). We review a trial court's conclusions of law *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

#### B. Valuation and Division of Marital Property

Tennessee Code Annotated § 36-4-121(a)(1) authorizes the trial court in actions for divorce or for legal separation, to equitably divide, distribute, or assign the marital property "without regard to marital fault in proportions as the court deems just." *See Jolly v. Jolly*, 130 S.W.3d 783, 785 (Tenn. 2004). Our legislature has set out a list of relevant factors for the court to consider when dividing marital property. These are:

> (1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contributions by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled his or her role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party; and

(10) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c)

The trial court's task is to make an equitable, or fair, distribution of property. "The trial court is empowered to do what is reasonable under the circumstances and has broad discretion in the equitable division of the marital estate." *Keyt v. Keyt*, 244 S.W.3d 321, 328 (Tenn. 2007) (citing *Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003)). Although Tennessee Code Annotated § 36-4-121(a)(1) requires the court to order an equitable division of marital property, an equitable division is not necessarily an equal division. *Larsen-Ball v. Ball,* 301 S.W.3d 228, 231 (Tenn. 2010); *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002); *Smith v. Smith*, 984 S.W.2d, 606, 609 (Tenn. Ct. App. 1997).

Because the division of marital property is "not a mechanical process," and because decisions regarding the division of marital property are fact-specific and many circumstances surrounding the property and the parties play a role, a trial court has a great deal of discretion concerning the manner in which it divides marital property. *Keyt*, 244 S.W.3d at 328; *Jolly v. Jolly*, 130 S.W.3d, 783, 785 (Tenn. 2004); *Flannary*, 121 S.W.3d at 650; *Smith*, 984 S.W.2d at 609.

As a general matter, reviewing courts will evaluate the fairness of a property division by its final results. *Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990). Further, "unless the court's decision is contrary to the preponderance of the evidence or is based on an error of law, we will not interfere with the decision on appeal." *Sullivan v. Sullivan*, 107 S.W.3d 507, 512 (Tenn. Ct. App. 2002) (citing *Goodman v. Goodman*, 8 S.W.3d 289, 298 (Tenn. Ct. App. 1999)). Thus, appellate courts ordinarily defer to the trial court's division unless it is inconsistent with the factors set forth in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *Jolly*, 130 S.W.3d at 785-86.

Husband complains that the trial court's division of marital property and debt in this case was inequitable because it was very one-sided in favor of Wife. He also claims that the trial court erred in its valuation of the marital assets, but notes that even according to the trial court's valuations, Wife received marital property with a total value of $193,221.87, while the total value of the property awarded to him was only $25,225. He accordingly asks this court to reverse the trial court and award him half of the marital property. He also argues that the factors governing spousal support preponderate against the trial court's award of alimony to Wife. We will briefly discuss the question of valuation first.

Decisions regarding the value of marital property are questions of fact, and we will not second-guess them on appeal unless they are not supported by a preponderance of the evidence. *Owens v. Owens*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007) (citing *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998)). Husband asserts that Wife presented lower estimates of the value of the property she wished the court to award to her and higher estimates of the value of the property she wished the court to award to Husband, in order to reduce the appearance of disparity in values between their respective awards, and that the trial court erred by adopting her valuations *in toto*.

We are necessarily constrained in our discussion of valuation by the limitations imposed on us by the state of the record. For example, Husband notes that the marital home was purchased for $190,000, and he complains that the trial court accepted Wife's valuation of $171,000, even though there is no indication in the Statement of the Evidence that she offered any explanation for the discrepancy. There is no indication in the record, however, that Husband challenged Wife's valuation of the marital home at trial or offered

contradictory evidence of value. Under Tenn. R. App. P. 13(c), this court is only allowed to "consider those facts established by the evidence in the trial court and set forth in the record."

Husband also takes issue with the trial court's valuation of $11,000 for the 1929 Model A Ford. He acknowledges Wife's testimony that the parties found a similar model car on the internet for that price. He testified, however, that the car is completely disassembled, missing parts and rusted over, and he estimated that it was worth no more than $2,000 in its current condition. However, in the face of conflicting opinions regarding the value of a marital asset, the trial court may place a value on the asset that is within the range of the values presented by the competent evidence. *Owens*, 241 S.W.3d at 486 (citing *Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997); *Brock v. Brock*, 941 S.W.2d 896, 902 (Tenn. Ct. App. 1996)).

All of the trial court's valuations were supported by competent evidence. Thus, the record does not contain sufficient countervailing evidence to overcome the presumption of correctness that accompanies the trial court's findings of fact. Further, whether or not we accept Husband's valuations as correct, it remains beyond dispute that under the trial court's order, Wife received a far greater share of the marital assets than did Husband. Thus, the question of exact valuation is only marginally relevant to our inquiry into the equity of the property division.

The trial court correctly noted that this was a long-term marriage, and that in the absence of other countervailing considerations, that factor supports a presumption that the marital assets should be equally divided. *See Dellinger v. Dellinger,* 958 S.W.2d 778, 781 (Tenn. Ct. App. 1997) (citing *Harrington v. Harrington*, 798 S.W.2d 244, 245 (Tenn. Ct. App. 1990)). However, the court found that under the extraordinary circumstances of this case, an equal division was not appropriate, citing in particular "[t]he contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property including the contribution of a party to the marriage as homemaker, wage earner or parent, . . . ." Tenn. Code Ann. § 36-4-121(c)(5).

It is undisputed that Wife has always been the family's primary wage earner and that Husband earned very little over the course of the marriage. Husband had apparently testified, however, that he was a "stay-at-home dad," and implied that he had been the primary caretaker of the parties' child. The trial court found his testimony not to be credible, and concluded that Husband had contributed very little to the parenting of the child. Wife thus had to serve not only as the family's main breadwinner, but also as the primary parent. In light of her testimony as to periods of time when Husband was unable to get out of bed or off the couch, it is likely that she functioned as the primary homemaker as well.

Husband also implies that the trial court should have considered the profit the parties enjoyed from the sale of the cabin that they bought from his mother at a below-market price as a significant contribution to the marriage on his part. The trial court did acknowledge in its Memorandum the role played by that sale in the financing of the marital home, but it also noted the long hours that Wife worked to earn enough to be able to buy the cabin, as well as to make the down payment on the marital home. We can find no error in the trial court's determination that Wife's contribution to the acquisition and preservation of the marital property far exceeded Husband's and that it justified awarding a far larger share of that property to her than to Husband on that determination.

In contrast to "the contribution of each party, . . ." which is a retrospective factor, many of the other statutory factors for division of marital property are prospective. That is, they look at the relative positions of the parties after divorce, including their mental and physical conditions and their ability to support themselves without the assistance of the other spouse. If these factors were considered in isolation, then Husband would likely be entitled to a greater share of the marital estate than he was awarded. Unlike Wife, who has a college degree and professional certification, Husband does not have a college education, and he has experienced unfortunate mental health issues, but is now in counseling.

However, Husband has managed to find and perform a variety of jobs, and there was no testimony as to any physical problems that might limit his employability.[4] Further, his certified mental health counselor testified that he had achieved a measure of control over his obsessive-compulsive disorder, which appears to have been at its worst when he was staying home with his young daughter. The evidence therefore suggests that he has the ability to support himself.

The trial court's memorandum shows that it considered all of the statutory factors before coming to the conclusion that the post-divorce economic circumstances for both parties were problematic and that "it will be financially difficult for Wife to live separately and provide for herself and the child with very little, if any, financial assistance from Husband towards child support." The court accordingly relied on the relative contribution of each party to the acquisition of the marital assets as the decisive factor in its decision to award the marital home to Wife, free of any claims by Husband, but subject to a mortgage for which she would assume full responsibility.

---

[4]Husband's brief on appeal states that he "worked at several jobs, including McDonalds, Pepsi, janitorial services, and he also supervised handicapped people." The record shows Husband had a job removing asbestos and worked with the Sheriff's Department. Husband testified that he was working as a substitute teacher and doing odd jobs at the time of trial.

Wife has the greater need for the home since she is raising the parties' child there, and she is in a far better position than Husband to pay the mortgage and the other household expenses. Husband does not argue that he should have been awarded the home instead of Wife, but he suggests that the trial court should have adjusted the division of marital property somehow, so he could receive an equal share of the marital assets. However, the marital home was the most valuable asset in the marital estate by far, worth more than all the other assets combined. To even come close to equalizing the property division, the trial court would have had to order Wife to either sell the only home the minor child has ever known, or incur substantial debt, thereby greatly increasing her financial burden. In its Final Order, the court declared that such a solution "would not only be inequitable, but unconscionable . . . ." In sum, the evidence does not preponderate against the trial court's division of marital property.

## C. Alimony

The Final Order in this case declared that "Wife shall receive as alimony *in solido* half of the equity in the former marital residence, representing Husband's portion of equity in said residence." Husband correctly argues that the trial court erred by awarding any form of alimony to Wife, since he is clearly the economically disadvantaged spouse, and he has the greater need, while Wife has the greater ability to pay.

Tenn. Code Ann. § 36-5-121(a) authorizes our courts to award alimony in divorce cases "to be paid by one spouse for the benefit of the other, or out of either spouse's property, according to the nature of the case and the circumstances of the parties." Other sections of the same statute refer numerous times to the "relatively disadvantaged spouse" as the one who is entitled to such support. It is undisputed that Husband is at an economic disadvantage relative to Wife, and thus it is inappropriate to order him to pay alimony to Wife.

Tenn. Code Ann. § 36-5-121(i) sets out a list of factors for the court to consider in determining whether an alimony award is warranted, and if so, the type and amount of such an award. These factors are similar to the ones set out in Tenn. Code Ann. § 36-4-121(c) to assist the court in reaching an equitable division of marital property, except that in making an alimony decision, the court may consider "[t]he relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so." Tenn. Code Ann. § 36-5-121(i)(11).

Our courts have stated many times that in making an alimony determination the most important factors to consider are the obligee spouse's need and the obligor spouse's ability to pay. *Robertson*, 76 S.W.3d at 342; *Bogan*, 60 S.W.3d at 730; *Riggs v. Riggs,* 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007); *Lancaster v. Lancaster,* 671 S.W.2d 501, 503 (Tenn. Ct.

App. 1984). Although the trial court is required to consider all the relevant factors, it nonetheless, "is afforded wide discretion regarding the award of spousal support, and we will reverse the court's findings only upon determining that such discretion 'has manifestly been abused.'" *Hill v. Hill,* M2007-00471-COA-R3-CV, 2008 WL 1822453 at *7 (Tenn. Ct. App. Apr. 23, 2008) (no Tenn. R. App. P. 11 application filed) (citing *Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1989)).

Husband also argues that the trial court should have awarded him alimony. We find that the trial court did not abuse its discretion in declining to award alimony to Husband. We agree with Husband, however, that under the circumstances of this case, it was inappropriate to award alimony to Wife. However, that does not mean he is entitled to half the equity in the marital home. Because the marital home was acquired during the course of the marriage, and because the equity in it was acquired by payments made during the marriage, both are included in the statutory definition of marital property:

> "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing a complaint for divorce . . . .

Tenn. Code Ann. § 36-4-121(b)(1)(A).

The trial court was therefore authorized to determine the proper disposition of the marital home and the equity in the home pursuant to its authority under Tenn. Code Ann. § 6-4-121(a)(1) to divide marital property equitably. As we stated above, an equitable division is not necessarily an equal division. In this case, the most equitable division is one which leaves the marital home to Wife, free of any claims by Husband, but subject to a mortgage for which she assumes full responsibility, with Wife also assuming all responsibility for the other marital debts.[5]

We thus affirm the award of the marital home and all the equity in it to Wife, but we modify the trial court's judgment by making that award part of the division of marital property rather than a separate award of alimony.

---

[5]The trial court itself recognized the problematic nature of its alimony award by stating in its order denying Father's motion to alter or amend that "even if this court erred in its award of alimony *in solido* to Wife, that this Court would find that an equitable division of the martial (sic) property in this case would mandate that Wife should retain the former marital residence free and clear of any claim by Husband."

**IV.**

The judgment of the trial court is affirmed as modified. We remand this case to the Chancery Court of Maury County for any further proceedings necessary. Tax the costs on appeal to the appellant, Emerson John Phelps.

_____
PATRICIA J. COTTRELL, JUDGE